The issue in this case is whether a reasonable consumer would be surprised by the fact that that natural or plant-based whites are composed primarily of synthetic ingredients like butoxy peg-4, PG, M.O. dimethicone. Here, this exact same product was found to have a claim stated under California's consumer protection statutes in Jow v. Kimberly Clark by Judge Corley in 2013. This is a case we cited on page 35 of our opening brief. It's the exact case and the exact same product where she found that this stated a claim under the CLRA, UCL, and FAL. Just like in Jow, we're simply asking that this be allowed to move past a pleadings challenge. We're not asking, and the only issue here is whether there's a claim stated, not whether there's actually been deception. Kimberly Clark's argument amounts to, as a matter of law, a front label cannot be deceptive if there's any way to read it consistently with a rear label, even if the label actually deceives most consumers and even if it had been carefully designed to deceive them. That state of affairs, that eventuality, was rejected by the court. And Bell, by the Seventh Circuit, has been rejected by the Second Circuit in Mantecas and was rejected by this circuit in Williams and other cases. I would also like to add that this case implicates Judge Gould's concern in identity regarding greenwashing. Here, we have an environmental product that people buy specifically because of its environmental benefits, including the fact that it's supposedly a natural and non-synthetic product. Well, it doesn't say 100% natural, does it? No, it doesn't. It says plant-based. It doesn't say 100% plant-based. That's correct, or 100%? I mean, even with plant-based, I guess I'm trying to understand that. Are you saying that because it says 100% or is it because you say plant-based that someone should think? I mean, one would think that, yes, that doesn't have any animal in it if it says plant-based, right? Because that term is sort of from the world of sort of nutrition and food and whatnot. But does it implicate that it's not synthetic? Well, I take Your Honor's point to be that the definition of plant-based, the one that the district court essentially chose, meaning that it could mean simply doesn't include food items or non-food items, that's potentially true. I mean, I would say that on the front label there is a statement that it is natural. Natural, even if it said nothing about plant-based. Natural itself has been held to be a, where it's unqualified as it is here, one that leads a reasonable consumer to assume the absence of synthetic or man-made products. Can you assign me that case? I just want to make sure I know what case that proposition stands for. Well, I mean, just a couple months ago we just submitted a case called Corpus. And the Corpus case, C-O-R-P-U-Z, actually distinguished McGinnity finding that natural, unlike nature fusion or other kinds of front label attributes, is quite clear and is entirely unambiguous. And in fact, we also- Unambiguous to mean what? Unambiguous to mean not synthetic. I mean, this circuit's law, and it was in cases such as Moore v. Morris Pet Care and in the California Court of Appeal case, Brady v. Bayer, found that a rear label that contradicts rather than confirms a front label attribute cannot be a cover for a liability, at least as a matter of law. It is, I mean, the word synthetic is an antonym of natural. Natural is the front label attribute, and on the back label it says actually synthetic. That is the very definition of a back label, you know, cover or disclosure, forgetting the fact that it's in very small font, very hard to parse among three paragraphs of text. That itself makes it contra the front label, and that brings it directly within the world of Williams and Brady. And this is also unlike McGinnity. In McGinnity we had a case where the front label and the back label aligned. There were avocados, as the court pointed out in its decision, showing that the avocado was the natural ingredient that had work in that product, both on the back label and the front label. Here we have a back label that directly contradicts. If the court were to adopt some contrary rule, or to say that a back label can in fact provide cover to contrary front label attributes, then that would upend law in the circuit. That would mean that Williams would have come out differently today, because in Williams you had, well, McGinnity seems to say that, when there's some ambiguity, right? So when there's some ambiguity, yeah, turn that package over. Here, why isn't it just some ambiguity? Why is it, I guess the way you would look at it was it would be deceptive, that it was sort of intentionally deceptive. And how is that different, those two questions, and how is that different than regular marketing? Right, so I'll take the point about, you know, I believe that the correct way to read McGinnity is that it's dealing with completely amorphous types of representations, ones that are susceptible to, as it said in the text of McGinnity, any number of definitions, not one that. But it has to be unambiguously deceptive, as I understand. Is that correct? Correct. So you're saying that this label, the natural and the 100% plant-based, that makes it so. Well, at a minimum, natural is unambiguous, especially when compared to synthetic, which is the antonym of natural. In other words, the buyer is looking at a product that, as the Brady case said, shouts a particular message. The message it's shouting is that we have, that this is a natural product, that it is also plant-based, and that it is also one where there are prominent pictures of green leaves all over it. That would leave the reasonable consumer to think, okay, I'm getting a natural product on the back label. It says, actually, you're getting the opposite of natural. You're getting a synthetic product. That is the very definition of taking away what is trumpeted on the front by something on the rear. I've gotten told, Judge Gould, if I can ask you a question. Yes, Your Honor. At some point, I thought the labels had an asterisk on them that explained more precisely what the composition of the product was. What was the precise language in the labels with the asterisk? So, in the labels that had the asterisk, the precise language was plus or minus 70% by weight. I'm sorry, 70% plus or minus by weight. Now, for those products, our position is that even if one could find that 70% plus or minus by weight, it has no clear meaning. What does that mean? What is it modifying? Now, the district court put in, helpfully, brackets that said what it believed that it modified, but that's not what the reasonable consumer's experience would be looking at a product that has, on one side of the front label, some attributes such as that it's plant-based and pictures of green leaves, and then far away on the periphery of the front label in microscopic and sort of surreptitious font to say, actually, this is 70% plus or minus by weight. So, even for the asterisk products, I think your honor's point is correct, and that's what it says, and we believe that that was an ambiguous disclaimer. And really, all of this ties into, I think, the third point that we'd make, which is that the district court improperly held the reasonable consumer here of an everyday, inexpensive, common item that one buys at the grocery store to the heightened level of the consumer, the niche, expensive product like in Moore versus Trader Joe's. And, in fact, the last paragraph in the district court's order here is all about the heightened standard from Trader Joe's. It's Manuka honey, your honor, where the court took great pains to explain that the Manuka honey indicator or the index that's made specifically for Manuka honey, it's very high product price, $20 brands, all of that meant that someone would understand how Manuka honey works. I loved learning about bees in this process. Absolutely, your honor. And in your case, is it the babies that don't like the synthetic baby wipes? I would believe that it's the parents who are paying extra. Oh, I'm sorry. I would believe it's the parents who are paying extra so that their children can have on their bodies a natural product, as well as parents who are concerned about landfill and other sorts of environmental problems. Landfill, because I gather the babies aren't crying more because there's less honey. That's outside the record, your honor. I don't know. But what I do know is I have another question for you. Yes, your honor. Why wouldn't the 70% asterisk products be suggesting that there's 70% natural or 70% plant-based? That's the other language on the front label. So if there's an asterisk that has that 70% language, I'm having trouble seeing why that's deceptive. Well, I think that it's important to note that, first of all, the asterisk products are only one subset of what we're dealing with here. So even if we lost on the asterisk products, we still believe that a reversal is required. So you're conceding on this? We're not. I'm saying that even if the court disagreed with us on the asterisk products, I think that we would still have our work be. . . What defense do you have or what argument do you have as to the asterisk products? I think that's as good a rule as I ask. Oh, well, I'm sorry. Yeah, the asterisk products are unclear. The asterisk and what it modifies is unclear. Your honor, McGinnity, that means you turn that over in the back. Well, McGinnity's talking about front label statements and back label disclosures. Here, the 70% is the disclosure. There's nothing to turn and find out more of, at least about that. That's the only statement on the box that speaks to a percentage of synthetic versus non. . . Well, why would you think that 70% means 100% natural? Well, I'm saying . . . A normal consumer would. . . Our position on the asterisk products is that it's unclear what it means. It could mean that it's 70% white versus water, that it's 70% cloth fiber versus liquid. It could mean any number of different things. And that's the disclosure, though, which is different than a front label statement. Counsel, you have two and a half minutes. Let me ask Judge Gould, do you have any questions right now? No. All right. All right. Thank you very much. Thank you. Good morning, Your Honors. Theodore Boutrous for Kimberly-Clark. Let me reset the argument here. Counsel started by saying that these products were primarily synthetic. That's simply false, as the district court found. There's no dispute that all of the products, including the ones without the asterisk, are 70% plant-based. It's wood pulp. The label says very clearly it's 99% purified water, the solution. The plant-based language modifies the natural care. So the label tells you that it's plant-based, but the asterisk, it says 70%, plus by weight. And this is not a case where it's all natural. Okay, well, on the 70% asterisk ones, what about the other ones? So on the other ones, Your Honor, this really falls into the McGinnity bucket. Counsel, in their opening brief, we had a 2023 decision from this court, authored by Judge Gould, that sets very, very clear standards. Plaintiff didn't address it until page 50 because they have no answer for it in judgment. Those of you who are stating the standard correctly, McGinnity synthesized this rich body of cases from this circuit and said a couple of things. First, the burden is not a small one for a plaintiff in these circumstances. The plaintiff must show that there's a probability, a probability that a significant portion of the general consuming public would be likely to be misled. It then said, as Judge Mendoza, you pointed out, unless the label is unambiguously deceptive, then the court and the defendant can insist that the consumer and the court look at the entire package. What about that argument that natural is, in fact, the opposite of synthetic? Well, Your Honor, that's not correct. It can be natural to a certain extent. As the court said in McGinnity, the front label represents that something about the product bears a relationship to nature, which natural care is the language on the label. It's not, this is a natural product. Natural care is different than natural counsel, isn't that? It is, Your Honor. I think natural is different. Natural care modified by plant-based, and this is, I'm putting aside the asterisk, a reasonable consumer who cared about these issues, who cared about having natural products, at a bare minimum, it might be ambiguous. And that takes us directly to McGinnity, where the court declared that where the front label is ambiguous, the ambiguity can be resolved by reference to the back label. And then, as Judge Gould, I think, pointed out, the back label says in capital letters natural and synthetic ingredients. And this is just McGinnity all over again. In McGinnity, too, counsel said, well, that was natural fusion was the label. But the plaintiff in McGinnity argued that a reasonable consumer would assume that that meant a fusion of natural ingredients, very much like what they're arguing here, that you've got the word nature, everyone thinks all natural, all natural ingredients. The defendant in McGinnity argued that no, a consumer might think that means a combination of natural and synthetic ingredients. This court held that that meant it was ambiguous, and therefore you can consult the back of the label. And in McGinnity, there wasn't an all-caps disclosure, like there is here, that there were natural and synthetic agreements. It literally says natural and synthetic agreements on the back of the label. And in McGinnity, the consumer had to look at the ingredients and determine what was natural and what was synthetic. So here, this is McGinnity plus. It's a stronger case than McGinnity. The other point that counsel made on the question, well, actually, let me just stick with McGinnity for a second here, because, again, counsel relies on the Williams case and the Bell case. And he did at least reference the Moore versus Trader Joe's case, the Manuka honey case, which they didn't even cite in their opening brief. That was one of the key cases the district court relied on. And let me address that, because McGinnity relied on Moore. It didn't say it was some outlier because it had this particular type of honey. It said that McGinnity, and it cites the Bell case from the Seventh Circuit that counsel relies on. McGinnity said that Moore stood for the proposition that, in most cases, the consumer and the courts should look at the entire mix of information available to the consumer in determining whether the labeling is deceptive, unless the label is unambiguously deceptive. And the court, this court gave as an example, all natural, 100% natural. In the Manuka case, it was 100% New Zealand Manuka honey. And the court still found that it was appropriate to look at the total mix of information. And here, plaintiff gives. Well, it was a total mix of information. I mean, you shower this packaging in green leaves. You put, you know, natural care. You say it's, you know, give the impression to the consumer, according to plaintiffs, that this is natural, that this is, you know, not synthetic. And that's a concern in McGinnity, isn't it? It is there, but the same thing in McGinnity. It was natural fusion, an avocado sitting on a green leaf. Here you have trees, pine trees. The product here is 70% wood pulp. There's nothing misleading about showing trees. In one of the labels, it's on page 60 of the ER, I'm looking at that. That is not a pine leaf. No, there's a leaf that Winnie the Pooh is holding, I think one could argue, is an aloe vera extract leaf, which is listed on the ingredients. And so, the... I have a big old leaf. There are different labels on the honey. You're not buying honey. I'm from Washington. They submitted many labels, and they never quite identify which ones plaintiffs saw, which is another problem. But the target labels, I'm going to make this point, but I have an important point I really want to make, that the target purchases, the plaintiff made every label, as we point out, that came from Target according to their own appendix, has the 70% disclaimer. But back to your point. So, the imagery, just as in the McGinnity case, there was green imagery. There's nothing misleading about that, Your Honor. These are 70% wood pulp. 99% of the solution that is with the wipes, and these wipes are made to stay wet for months and sometimes even years, so that a mother or father can have easy access to use on their baby. And this goes back to the point I wanted to make about the honey bee case. Counsel says, well, someone would care more about the honey they're going to get. Honey is, in the words of the Trader Joe's. I guess that's from my question. The greenwashing concern that we're talking about in McGinnity. Again, showering this, every other type in this packaging is green, including the lettering, except for huggies. Everything is green, again, including those big, broad leaves that are in the packaging. Yes, Your Honor, I think it's completely reasonable and accurate that these are, compared to other products, these are 70% plus wood pulp. So, natural plant-based products. The solution is 99% purified water, which indicates. On the asterisk labeled products where it says plant-based, if a reasonable consumer would assume that that means it's all plant-based, then why don't the plants have a cause of action? Because, Your Honor, as the district court found, plant-based, one interprets that their own complaints as that means primarily. And we use the example of tomato-based pasta sauce that has meat in it. One would say it's tomato-based. Faith-based education. There's faith part of the education, but there are other things. Somebody said plant-based meat. They don't assume, oh, it's mostly plant, but there's some meat in it. No, they assume it's meatless. That would be different when you're talking about that context. And everything is contextual. But here, Your Honor, again, they are. Can we say as a matter of law that no reasonable consumer would think plant-based meant all natural? Because if we can't say as a matter of law that nobody would think that, then it's a fact-based question that we can't grant. I respectfully disagree, Your Honor. That's where McGinnity comes in handy. So they take the position that if they can proffer a reasonable interpretation, they can get by a motion to dismiss. That's not correct in this circumstance. That if there are two, they say, equally plausible in their brief interpretations of the front label, that means it's at best ambiguous. If it's ambiguous, this court doesn't need to blind itself to the back of the label, which Judge Gilman says natural in synthetic agreements. That's the core holding of McGinnity that they cannot come to grips with. Throughout their brief, they say our interpretation is reasonable. Okay, I'll give them that. If their interpretation is reasonable, so is our alternative, just like in McGinnity, that a reasonable consumer would say plant-based, natural care, that sounds like it might be all natural, but this is where the Manuka honey case comes in. Your Honor, I stand with this California Court of Appeals case called Brady v. Bayer. That's my favorite case, Your Honor. Yes, this is my favorite case because it says one a day on the front, and then it says take two. Now, that is a misleading label. Our label says plant-based, natural care. You look at the back of the label, and it says natural in synthetic agreements. The Brady case said, though, the opinion of Brady said that they don't, the customer doesn't have to look at the back to say two because there are a number of reasonable customers who think one a day means only one a day. That's an example of an unambiguously deceptive front label because it said one a day. And that would have been like this label saying all natural, or this is what the court said in McGinnity, or 100% natural. Then you go to the back, and it says natural in synthetic. That would be the analogy to Brady. The McGinnity case is so directly on point. The McGinnity never cited Brady. Brady did it. I'm not sure it did, but Brady, it cited the Williams case, which Brady relied on Williams. And let me address Williams because that's their big case. Williams has been refined and explained both in Trader Joe's and the Fresh case regarding the lip balm and in McGinnity. And the court pointed out there, again, the contrast is stark. There were pictures of cherries and all sorts of different types of fruit. And then it said real fruit juice and of all other natural ingredients. And it turned out when you looked at the back label, it wasn't any of those fruits. It was grape juice, white grape juice, and then corn syrup and some other things. And so it was a complete clash. Here, our label explains and elaborates on what plant-based means and on what natural care means. That's the exact circumstance that this court contemplated in the McGinnity case. So we think McGinnity did a great job of synthesizing these principles. And I think that the description of these labels that counsel has given, of course, when it says plant-based asterisk, and then there's an asterisk that says 70% plus by weight, a reasonable consumer would say that means this is 70% plant-based. If not, and they were curious, they would look at the back of the label to see, well, maybe I'm not getting this. It's ambiguous. That's what McGinnity stands for. And apparently your bigger problem is with the un-asterisk. And that's where we don't even need McGinnity for the 70% asterisk labels. I grant you that there are different interpretations one could have of the un-asterisk labels, but at best that means it's ambiguous, as the district court found, as plaintiff's complaint alleged. Something that is plant-based is primarily, one dictionary definition is primarily made of plants. So that then means that a reasonable consumer would read that and think it's primarily based on plants, which is true. 70% or more, wood pulp. 99% of the liquid is purified water, which, yes. Can you sign me a case that directly supports your position that plant-based, all consumers would understand that doesn't read 100% plant-based? Your Honor, I'm not saying that all consumers would think that. I'm saying that I'm giving the point that a reasonable consumer might think plant-based means all based on plants. But another reasonable consumer could think what I'm saying is, and what the district court found, that it's primarily. So you've got some reasonable consumer saying some reason it was in their zone. Well, then it's ambiguous. And under McGinnity, you look at the back of the label, which says natural and synthetic agreements. That's, Judge Gilman, that is the most important principle that I can lay my bet down on here. And it's absolutely correct. McGinnity was sort of this nature fusion, right? Correct. That's a little different than plant-based. The plaintiff. I don't know what nature fusion means. And plant-based. We're debating what it means. That means it's ambiguous, Your Honor. And that means under McGinnity, you look at the back of the label. What about this notion? I mean, I think that, you know, I think consumers are evolving in terms, certainly I think with environmental interest, with interest in, you know, in what they read and buy. And when you have something, the educated consumer would look at something that's showered in green, big old leaves on it, saying natural care and have this plant-based. I guess what's your position on that, that today's consumer would look at that and say, No, I think plant-based, that's having to do with no meat. That's not really what it is. And here natural care means just natural in general. The care was taken, but not mean 100%. I think as the court held in McGinnity and citing the Trader Joe's honey case, that a reasonable consumer would know that a product, a mass-produced product, that includes material wipes in a plastic container that's designed for those wipes to stay moist and wet and sanitary likely includes some synthetic products to avoid bacteria and mold. They know, as we said and the district court noted, these wipes don't grow on trees. They're a somewhat miraculous product. So a mother can be out and about and pull out a wipe, and it's like having a wet towel that's clean and can clean their baby. And that goes to my second point. I was about to make this before, that it's one thing to be shopping for honey. People care about it. And as your point of judgment knows, people do care about natural ingredients. So someone who cares would take the time, this is what the court said in McGinnity, to turn over the label, to check, to make sure, to see what's in the product. If they really care, particularly if we're talking about a product they're going to use in the most sensitive activities with their baby imaginable. I think you're out of time. Hold on. Let me just ask the judge. Do you have any other question? I do. I have a question. Yes, Your Honor. For Mr. Gutroski. So in your view of the case, does the asterisk on the label matter, or do you think the label without the asterisk is ambiguous enough that it evokes going to the back of the label? Yes, Your Honor. On the latter point, we think that it is vastly ambiguous whether plant-based natural care, 99% purified water, means all natural. We think it doesn't, but at a bare minimum it's ambiguous, which means you go to the back of the label, which says natural and synthetic agreements. The asterisk matters in the sense that it's a slam dunk. How can it possibly be when it says plant-based 70%? A reasonable consumer would interpret that to mean 100%. That makes no sense. It's absurd. No reasonable consumer would think that. And so we believe the court should affirm. Thank you so much. Thank you. Thank you very much. I just want to hit a couple of points to respond to my friend on the other side's arguments. Number one, this court, after McGinnity and Sauter, held that the reasonable consumer is not wary or suspicious of advertising claims. This is in stark contrast to the Trader Joe's case where, again, a niche product, a very expensive product like Manuka honey that apparently has a very devoted and knowledgeable fan base, that is a different kind of product than the one we're dealing with here. Here, Sauter, in its view of the reasonable consumer, applies. Number two, I would say that you're asking us to say, hey, there's really a subset of the reasonable consumer that might be deceived. Isn't that what you're asking us to do? I think what we're asking, I mean, for all of our claims, we're suggesting that certainly those that only got a rear-labeled disclosure, those people have stated a claim under a motion to dismiss standard. One can't say as a matter of law that they can't state a claim. That's exactly what I believe Judge Gilman was getting at. We're asking about Brady. Brady is a California Court of Appeal published case dealing exactly with California statutes, and they're held that there was a tendency to mislead, that the reasonable consumer does not have to be forced to look at the back label. And under opposing counsel's analysis here, one a day would come out the other way. One could say, well, yeah, you can take a vitamin one a day. That's a literally true statement. Maybe it's ambiguous, and you would just turn it around to say, oh, I need to take two actually a day. That's precisely the situation we're dealing with here where they're saying it's natural, but, oh, wait, on the back it says it's synthetic. Okay, well, if that's going to be a defense, that would be a defense there. That would be a tree. Do baby wipes grow on trees? I mean, that's their argument essentially. Yeah. The reasonable consumer would know, hey, this is not natural. Well, it's not a baby wipe. We're not suggesting that it hasn't been changed from its natural state. We don't believe that it's actually a tree wrapped in plastic. We think that the reasonable consumer believes that it's getting a tree that's been turned into wipes by a factory process without having other chemicals or other harsh products added to it. That's all this is about. It's not about that we suggested that we think wipes grow on trees, but rather that they're made for trees with nothing else having been added. I would add that the majority of the ingredients are synthetic. It's on page 29 of our complaint. We don't have enough information to know what that is by weight or volume, but we do know that the majority of the ingredients are synthetic, and that's on ER 29. Also, 70% modifies plant-based only, not natural. So even for the asterisk products, that's going to plant-based. That has nothing to do with the natural representation on the front. McGinnity was about nature fusion, and I believe present counsel mentioned that McGinnity involved a natural front label statement. It did not. It says nature fusion, which I would submit is quite a bit different than describing something as natural. Just one second, counsel. Judge Kroll, do you have any additional questions? No. Judge Kroll, any additional questions? Counsel, I think you are out of time. Thank you so much for the argument on both sides. I appreciate it very much. Thank you very much. Thank you. And this matter of Whiteside v. Kimberly-Clark Corporation will stand submitted.
judges: Gilman, GOULD, MENDOZA